IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRITTANY ZARCO,

               Plaintiff,

v.                                             Case No.  24-2091-JWB

BOOK AND LADDER, LLC,

               Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiff's motion for default judgment (Doc. 43) and motion for attorney's fees (Doc. 49.)  The motion for default judgment is GRANTED and the motion for attorney's fees is GRANTED IN PART and DENIED IN PART for the reasons stated herein.

I.      **Facts and Procedural History**

Defendant Book & Ladder, LLC, is a property management company that manages the Rockland apartment complex (the "property") in Lawrence, Kansas.  Defendant employed Plaintiff at the property as a guest experience associate from July 25, 2022, through March 27, 2023.

Plaintiff was terminated shortly after taking ADA leave for eye surgery in early March 2023.  She also made complaints of sexual harassment to Defendant in January and February 2023 which were not properly investigated.   On September 27, 2023, Plaintiff filed a charge of discrimination with the Kansas Human Rights Commission and the EEOC.  (Doc. 30-19.)

On March 13, 2024, Plaintiff filed this action alleging claims of sex discrimination and retaliation in violation of Title VII and disability discrimination and retaliation in violation of the ADA.  Plaintiff alleged that she was terminated in retaliation for filing a complaint regarding

sexual harassment and also terminated for taking leave under the ADA. Plaintiff further alleged discrimination on the basis of sex and disability. Defendant obtained counsel and appeared in this matter. Defendant moved for summary judgment on all claims. (Doc. 30.) The court granted summary judgment on Plaintiff's sex and disability discrimination claims. (Doc. 33.) The court denied summary judgment on Plaintiff's Title VII and ADA retaliation claims. The parties participated in an unsuccessful mediation on August 22, 2025. This matter was set for trial on October 27, 2025. On September 3, 2025, the court entered a scheduling order with final deadlines. (Doc. 36.) On September 12, defense counsel moved to withdraw on the basis that the attorney-client relationship was irredeemably damaged by Defendant's failure to communicate with counsel and failure to abide by the terms of the engagement agreement. (Doc. 37.) The court set the matter for hearing and ordered an officer or manager of Defendant to appear. (Doc. 38.) The hearing was held with defense counsel and Plaintiff's counsel. Defendant was notified of the hearing but failed to have an officer or manager attend. (Doc. 39.) The court vacated all deadlines and granted the motion to withdraw. The court further ordered Defendant to obtain counsel on or before October 15, 2025. The court notified Defendant that failure to obtain counsel could result in default judgment for failure to defend. (*Id.*) Defendant has not obtained counsel in this matter and Plaintiff has now moved for default judgment.

The court held a hearing on November 19, 2025. Plaintiff testified in support of the motion and her damages at the hearing. Subsequent to the hearing, Plaintiff filed a motion for attorney's fees and costs. (Doc. 49.)

## II.     Entry of Default

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55. The party must first seek an entry of default from the clerk and then move for

default judgment with the court.  *Id.*  The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co*., 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp*., 115 F.3d 767, 771 (10th Cir. 1997)).  Plaintiff has sought and received a clerk's entry of default in this matter as required by Rule 55(a).  (Doc. 47.)

Here, Defendant has failed to defend against this case.  Although Defendant initially defended this case, Defendant has now abandoned its defense and failed to comply with court orders.  Defendant was notified that it must obtain counsel to proceed in this action and it failed to do so.  Defendant may not appear pro se as an entity.  *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993).  Defendant was placed on notice that the failure to obtain counsel and defend this matter could result in a default judgment.  Therefore, the court finds that an entry of default judgment is appropriate.  *See Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (affirming default judgment under Rule 55 where, although they filed a responsive pleading, the defendants subsequently failed to notify the court or their attorney of changes in address, failed to appear for hearings, and did not respond to notices from the court).

The court also has an affirmative duty to look into its jurisdiction over the parties prior to entering a default judgment. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant.").  Turning to the merits, once default is entered Defendant is not entitled to defend itself on the merits and the court must determine whether Plaintiff's allegations, which are taken as true, state a claim against Defendant.  *See, e.g., Kalinich v. Grindlay*, No. 14-1120-SCA, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014).  Then, "damages may be awarded only if the record

3

adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)).

## III.    Default Judgment

### A.  Subject Matter Jurisdiction

A federal court "has an affirmative duty to determine whether it has subject matter jurisdiction" prior to issuing a default judgment. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1161 (D. Kan. 2018). One of the statutory bases for subject matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. § 1331. Here, Plaintiff alleges claims of retaliation under Title VII and the ADA. These claims are both created by federal law. Thus, the court has federal subject matter jurisdiction over Plaintiff's claims.

### B.  Personal Jurisdiction

At the outset, the court notes that Defendant has waived any objection to personal jurisdiction by failing to raise it. Fed. R. Civ. P. 12(h). Further, when Defendant was represented by counsel, Defendant represented that there was no dispute that the court has personal jurisdiction over the parties. (Doc. 29 at 1.) In any event, out of an abundance of caution, the court discusses personal jurisdiction over Defendant.

To determine whether this court has personal jurisdiction over Defendant, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (cleaned up). Because Title VII and the ADA do not provide for nationwide service of process, the court applies the law of the

4

forum.  *See* Fed. R. Civ. P. 4(k)(1)(A); s*ee also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Kansas law allows jurisdiction to the full extent permitted by due process, so the analysis collapses into the constitutional analysis. *TH Agriculture & Nutrition, LLC v. Ace European Group, Ltd*., 488 F.3d 1282, 1286-87 (10th Cir. 2007).  Therefore a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state."  *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979).  The requisite minimum contacts may be established under one of two theories: "specific jurisdiction" or "general jurisdiction."  If the requisite minimum contacts are met, the court proceeds to determine whether the "assertion of personal jurisdiction would comport with fair play and substantial justice."  *Old Republic Ins. Co.*, 877 F.3d 895, 903 (2017) (internal quotations omitted).  Specific jurisdiction exists if the defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal citations omitted).

In this case, Plaintiff alleges Defendant is a foreign limited liability company doing business in Kansas. (Doc. 1 at 1.)  Defendant operated an apartment complex in Kansas, employed Plaintiff in Kansas, and the alleged discrimination took place in Kansas. Therefore, Plaintiff's claims, at a minimum, arise out of Defendant's contacts with Kansas.  Accordingly, the court may exercise personal jurisdiction over Defendant.  Satisfied that this court has jurisdiction in this matter, the court proceeds to the merits of Plaintiff's remaining claims.

**C.  Title VII Retaliation**

Plaintiff alleges that Defendant retaliated against her for engaging in protected activity. To establish her claim, Plaintiff must show 1) that she engaged in protected opposition to discrimination, 2) "that a reasonable employee would have found the challenged action materially adverse," and 3) "that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

The court finds that Plaintiff's allegations in her complaint and her testimony establish her claim of Title VII retaliation. According to the allegations, which are deemed admitted, Plaintiff was subjected to sexual harassment during her employment by a tenant at the property and a co-worker, Nando Mandriquez. Mandriquez kissed Plaintiff on the neck without permission and sat on her lap without her permission. Plaintiff reported the kiss to her supervisor, Cayce Lay. Lay also witnessed the sexual harassment but did not intervene. In response to Plaintiff's complaint about Mandriquez, Lay told Plaintiff that the "company was under no obligation to provide her with a safe workplace." (Doc. 1 ¶ 15.) Due to the lack of any response, Plaintiff escalated her complaint to the regional manager, Matt Peters, on February 12, 2023. Defendant failed to take any action on her complaint of sexual harassment.

Shortly after her complaint, Plaintiff went on medical leave for eye surgery. Plaintiff sought and was granted medical leave from March 1 to March 16. Shortly after returning, on March 23, Plaintiff was terminated. Plaintiff was told that her termination was due to her bad attitude. Plaintiff testified at the hearing that she believes that her complaints were the basis for Lay's statement that she had a bad attitude.

Based on these uncontested facts, Plaintiff has established that she engaged in protected activity by making complaints of sexual harassment, Plaintiff's termination was an adverse action, and there is a causal connection between her termination and her complaints. *See e.g., Ward v.*

*Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection.").

Therefore, the court finds that Plaintiff successfully stated a claim of retaliation against Defendant.

### D.  ADA Retaliation

Plaintiff has also brought forth an ADA retaliation claim.  Even if not disabled under the ADA, Plaintiff may proceed with an ADA retaliation claim if she has a reasonable good faith belief that her activity is protected and the statute has been violated.  *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001).  To establish retaliation under the ADA, Plaintiff must show that (1) she engaged in protected activity; (2) a reasonable employee would find the action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.  *Winston v. Ross*, 725 F. App'x 659, 664 (10th Cir. 2018) (citing *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011)).

Although the court determined on summary judgment that Plaintiff was not disabled under the ADA, the evidence presented during the hearing and on summary judgment establish that Plaintiff had a good faith belief that her activity was protected under the statute.  Plaintiff testified that she suffered from a retinal detachment in early 2022.  The retinal detachment led to multiple surgeries.  As a result, Plaintiff also suffered from cataracts and needed cataract surgery during her employment with Defendant.  Plaintiff testified that her injury impacted her vision and that she had trouble working on a computer all day.  Plaintiff believed that she was entitled to medical leave under the Americans with Disability Act.  Plaintiff then engaged in protected activity by taking leave for her surgery.  Plaintiff sought and was approved for medical leave from March 1 through March 16.  Plaintiff was then terminated on March 27.  Because of the close temporal

proximity between her leave and termination, the court may infer causation. *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1205 (D. Kan. 2020), *aff'd*, 851 F. App'x 828 (10th Cir. 2021). Moreover, as discussed during the hearing, the evidence submitted on summary judgment indicated that one of the reasons Plaintiff was terminated was due to her leave taken in March 2023 for her surgery. (Doc. 30-14 at 3.)

Therefore, the unrebutted evidence supports a determination that Defendant retaliated against Plaintiff in violation of the ADA. The court now turns to the damages established at the hearing.

### E. Damages

#### i. Back Pay

Plaintiff seeks back pay for her claims. (Doc. 29 at 8); 42 U.S.C. § 2000e–5(g)(1) (stating that back pay is allowed for an unlawful employment practice). Back pay is the amount of money plaintiff would have earned from the date she was unlawfully terminated to the date the first judgment is entered. *Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994). Plaintiff is also responsible for mitigating her damages. "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g)(1).

Plaintiff testified to her lost back pay at the hearing. Plaintiff was unemployed from March 27 to April 30, 2023. During that time, her lost wages were $3,438.50, based on prior pay and benefits of $133.94 a day. From May 1 to June 4, 2023, Plaintiff was able to obtain part-time employment and worked 15 hours a week at $12 per hour. Her lost wages were calculated as $97.94 per day after subtracting the wages she was paid at her part-time job for a total of $2,350.56

in lost wages during this time. Plaintiff then obtained full time employment on June 5, 2023 at Hunter's Ridge Apartments and continues to be employed full time as a property manager.

In light of the evidence in the record, the court finds a back-pay award of $5,789.06 is appropriate.

### ii.  Compensatory and Punitive Damages[1]

Plaintiff also seeks compensatory and punitive damages against Defendant.  Under 42 U.S.C. § 1981a(b)(3), compensatory and punitive damages are capped based on the number of employees a defendant has.  Plaintiff argues that the cap on damages is an affirmative defense that must be pled by Defendant.  (Doc. 48.)  In support, Plaintiff cites to *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1165 (10th Cir. 2017).  In *Racher*, the Tenth Circuit addressed whether an Oklahoma statute that capped noneconomic compensatory damages operated as an affirmative defense or created a heightened pleading requirement for the plaintiff.   There, the Tenth Circuit was not addressing the statutory cap on damages in § 1981a(b)(3).  That provision explicitly states that the award of compensatory and punitive damages "shall not exceed" a specific amount depending on the number of employees.  *Id.*  Plaintiff fails to cite any authority that holds that this statutory provision operates as an affirmative defense.  Courts who have addressed this issue determined that this provision is "a Congressional limitation on the court's power to award damages to a Title VII plaintiff." *Oliver v. Cole Gift Ctrs., Inc.*, 85 F. Supp. 2d 109, 111–12 (D. Conn. 2000); *see also Miller v. Coventry Holding Grp., Inc.*, No. 1:23-CV-2064-TWT, 2025 WL 1008541, at *2 (N.D. Ga. Apr. 3, 2025).

---

[1] Caselaw within this district has found compensatory and punitive damages to be unavailable remedies for ADA retaliation. *See Boe v. AlliedSignal Inc.*, 131 F. Supp. 2d 1197, 1202 (D. Kan. 2001).  Here, the court has entered judgment in favor of Plaintiff on both retaliation claims under the ADA and Title VII.  Because § 1981a(b)(3) provides a limit as to damages for all discrimination claims and the adverse action was the same for both claims, the court's order on damages herein is based on the violation under Title VII.

Therefore, the court finds that the damages cap in § 1981a(b)(3) is not an affirmative defense that is waived if not presented. Turning to the evidence, Plaintiff has testified that Defendant is a large national company that operates several apartment complexes in the United States. Defendant's interrogatory response indicates that it has approximately 200 employees. Given the unrebutted evidence presented and Defendant's failure to defend this matter and provide evidence regarding the number of employees, the court finds that the damages cap in this matter is $200,000 because Defendant has more than 200 employees.

Turning to the requested damages, Plaintiff seeks an award of $50,000 in compensatory damages. Under § 1981a(b)(3), "compensatory damages [may be] awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Plaintiff testified that she felt betrayed by Defendant for her termination and she was embarrassed for being fired. Plaintiff lost her community as a result of the termination. Further, her unemployment caused significant strain and stress. Plaintiff was the primary caregiver for her younger sister who lived with her. Plaintiff resided in an apartment at the property but could not afford to move out after her termination due to her loss in income. This caused additional stress to Plaintiff because she would see Mandriquez on the property grounds. Further, Mandriquez, as the maintenance person, had access to her apartment. This caused additional stress in that Plaintiff was concerned he would enter her apartment when she was not at home. Based on the unrebutted evidence at the hearing, the court finds that an award of $50,000.00 is appropriate to compensate Plaintiff for her mental and emotional distress, humiliation, embarrassment, and frustration.

Plaintiff also seeks $100,000 in punitive damages because Defendant's actions were taken with malice and reckless indifference to her protected rights. The Tenth Circuit "take[s] seriously

the purpose of punitive damages, i.e., 'to punish what has occurred and deter its repetition.'" *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1309 (2003) (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991)). Here, Plaintiff's unrebutted testimony indicates that she reported sexual harassment by one of Defendant's employees, who was also accused of sexual harassment by a resident of the apartment. Plaintiff also was subjected to harassment by one of the tenants of the property. Although Defendant had knowledge of the harassment, the evidence was that Defendant failed to investigate the sexual harassment. Defendant had no established means for reporting and investigating claims of sexual harassment even though it is a company that runs apartment complexes across the nation, primarily for college students. Further, in response to Plaintiff's complaint of sexual harassment, Defendant terminated Plaintiff instead of taking action to properly investigate her claims.

Based on the foregoing, the Court finds an award of $100,000.00 in punitive damages appropriate to punish Defendant and deter similar wrongdoing in the future.

### F. Attorney's Fees and Costs

Under both the ADA and Title VII, a court has the discretion to award the prevailing party reasonable attorney's fees, litigation expenses, and costs. 42 U.S.C. § 12205 (ADA); 42 U.S.C. § 2000e–5(k) (Title VII). And absent "special" circumstances that would justify nonrecovery, the norm is that prevailing parties will recover them. *See Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1232 (10th Cir. 1997). Applicable here, the court in *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269 (D. Kan. 2016), held that a plaintiff was the "prevailing party" when it granted default judgment for her ADA claims. *See id.* at 1280.

Defendant has not participated in the proceedings, and the court has granted default judgment to Plaintiff. There are also no special circumstances in this case that would render

attorney's fees and costs unjust.  Thus, Plaintiff is the prevailing party and is entitled to reasonable attorney's fees, expenses, and costs.  Pursuant to Federal Rule of Civil Procedure 54(2)(A), a party seeking to recover attorney's fees must do so by filing a motion.  Plaintiff submitted a motion for attorneys' fees on November 26, 2025, thus satisfying the procedural requirement in Rule 54(2)(A).  (Doc. 49.)

Next, the fee must be reasonable.  *See Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998).  To determine a reasonable attorney's fee, a court finds the lodestar figure— which is the reasonable number of hours spent on a case multiplied by a reasonable hourly rate. *See Mathiason*, 187 F. Supp. 3d at 1280.  A plaintiff bears the burden of demonstrating that the number of hours is reasonable, *see id.*, and typically, counsel must exercise "billing judgment" which is a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Ellis*, 163 F.3d at 1202 (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)).  A court also has a duty to "exclude" hours that were not "reasonably expended." *See id.*  The second prong to the lodestar analysis (i.e., a reasonable hourly rate) is determined by comparing the hourly rates requested "with rates 'prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation.'" *Mathiason*, 187 F. Supp. 3d at 1281 (citation omitted).  A judge may also rely on his knowledge of the prevailing hourly market rates to determine if the amount requested hews closely to them.  *See id.*

Plaintiff's evidence indicates that counsel seeks $102,312.50 in attorneys' fees for 226.7 hours billed by two attorneys.  The record reflects that Kevin Todd, an associate, billed 175 hours and John J. Ziegelmeyer, a partner, billed 51.7 hours.  After reviewing the breakdown of the billing records in Document 49-1, the court finds that the number of hours billed should be reduced for duplicative work by two attorneys and to reflect that Plaintiff did not prevail on two of her claims

at summary judgment. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1207 (10th Cir. 2015) (holding that the court may reduce an award based on limited success and redundant billing). Therefore, the court finds that a reasonable number of hours in this matter is 125 hours, to be allocated as 100 hours for Mr. Todd and 25 hours for Mr. Ziegelmeyer.

Plaintiff also requests reasonable hourly rates for the attorneys given their experience. Mr. Ziegelmeyer is a partner at the firm representing Plaintiff and has spent 18 years practicing law in Kansas and Missouri. (Doc. 49 at 2–3.) He requests an hourly rate of $625. (*Id.* at 3.) Mr. Todd has been a lawyer for five years. (*Id.*) He has extensive litigation experience and requests an hourly rate of $400. (*Id.*) After the arguments and the supporting evidence, the court finds that the requested rates are reasonable in this district. Accordingly, the court awards Plaintiff's counsel $55,625.00 in legal fees.

Plaintiff also seeks to recover litigation expenses. Like the process to recover attorney's fees, a party seeking to recover litigation expenses must also do so by filing a motion. Fed. R. Civ. P. 54(2)(A). Counsel satisfies this requirement because they requested litigation expenses in their motion for attorney's fees. Plaintiff seeks $5,407.86 for expenses incurred in creating a digital image of Plaintiff's phone, collecting Plaintiff's medical records during discovery, travel expenses incurred for trips between Kansas City and Lawrence, KS for depositions and mediation, costs of mediation, and costs paid to the court reporter for deposition services. (Doc. 49-1 at 13.) Courts typically permit prevailing parties to recover reasonable expenses that are "usually itemized and billed separately." *See Marmon v. RPS Auto, LLC*, No. CV 22-2381-KHV, 2024 WL 1961432, at *6 (D. Kan. May 3, 2024) (citing *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997)); *see also Mathiason*, 187 F. Supp. 3d at 1281. The court in *Marmon* considered travel expenses as non-taxable litigation expenses. *See Marmon*, 2024 WL 1961432, at *6. The court finds that

counsel's requested litigation costs are non-taxable litigation expenses, and it also finds that the amount is reasonable.  Therefore, the court awards $5,407.86 in litigation expenses.

Next, Plaintiff seeks $663.48 in taxable costs.  Federal Rule of Civil procedure 54(d) authorizes the "[t]axation of costs" and 28 U.S.C. § 1920 governs it.  However, to recover taxable costs under § 1920(1), counsel must follow the procedures set forth in District of Kansas Local Rule 54.1(a).  *See Marmon*, 2024 WL 1961432, at *6.  Plaintiff has not done so.  Therefore, the request for $663.48 in taxable costs is denied without prejudice.

## IV.  Conclusion

Plaintiff's motion for default judgment (Doc. 43) is GRANTED.  Judgment is to be entered in favor of Plaintiff and against Defendant Book and Ladder LLC in the amount of $155,789.06 for back pay, compensatory, and punitive damages.

Plaintiff's motion for attorney's fees (Doc. 49) is GRANTED IN PART and DENIED IN PART.  Plaintiff is also awarded attorney's fees in the amount of  $55,625.00 and non-taxable litigation expenses in the amount of $5,407.86.

IT IS SO ORDERED.  Dated this 11th day of December 2025.

__ s/ John Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE